# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>MARK MISERANDINO,<br><br>　　　　　　Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:13CR639DAK<br><br>Judge Dale A. Kimball |

On July 20, 2016, the court held an evidentiary hearing in this matter, pursuant to 18 U.S.C.A. § 4247(d), pertaining to Defendant Mark Miserandino's potential discharge under 18 U.S.C. § 4246(e). At the hearing, the United States was represented by Trina Higgins, Defendant was present via teleconference and represented by Robert Steele, and the Bureau of Prisons ("BOP") U.S. Medical Center for Federal Prisoners was represented by Christina Schofield. At the hearing, the court heard testimony from Dr. Randy Brandt, Ph.D., the panel chairman of Defendant's risk assessment panel, Dr. Vincen Barnes, Psy.D., Defendant's treating psychologist, Commander Stanley, Defendant's release plan social worker, and Rebecca Ann Mabe, the Mental Health Supervisor at the Veterans Administration's Medical Center in Salt Lake City, Utah. The court heard legal arguments from Christina Schofield, Trina Higgins, and Robert Steele. The court took the matter under advisement. Having carefully considered the facts and law relevant to the present matter, the court issues the following Memorandum Decision and Order.

The first issue raised by the BOP is whether this court has jurisdiction to make a determination as to Defendant's commitment or release. The BOP argues that the Warden of the United States Medical Center determines under 18 U.S.C. § 4246 whether a Defendant is a danger to the community and the proper jurisdiction for the determination regarding release or continuing commitment is the district in which Defendant is residing, which in this case would be the Western District of Missouri. However, the BOP did not address the continuing jurisdiction this court has over Defendant in the present criminal case, the fact that the Warden filed his certification with this court rather than a court in Missouri, and the statutory framework enabling this court to have a hearing on the issue.

On January 28, 2014, the court ordered a psychiatric exam and report regarding Defendant's competency under 18 U.S.C. § 4241(a). On June 6, 2014, the court received a letter addressed to the Chief United States Probation Officer in Utah stating that the court-ordered study was complete and the United States Marshals Service had been contacted to return Defendant. The letter indicated that Defendant had an incident report for "threatening and insolence" but that it was dismissed due to his mental status. On June 16, 2014, the court received the forensic mental health examination report, dated May 27, 2014. The report found that Defendant suffered from a severe mental disease or defect, he could not understand the legal proceedings, and he could not assist his counsel.

On June 26, 2014, the court granted a joint motion of counsel finding that Defendant was incompetent to stand trial. The mental health report stated that if the court agreed that Defendant was not competent to proceed, Defendant could be committed to a period of competency restoration pursuant to 18 U.S.C. § 4241(d). However, the report also concluded that based on

2

the severity of the cognitive impairment and the amount of time that had passed since the brain injury occurred, Defendant would likely never be cognitively able to be restored to competency.

Based on this report, the court's June 26, 2014 Order stated that Defendant's condition was likely to never improve and he was, therefore, subject to the provisions of 18 U.S.C. § 4246. Therefore, based on the conclusions of the mental health report, the court bypassed the period for restoration of competency under 18 U.S.C. § 4241(d) and determined that Defendant was subject to Section 4246. Under § 4241, "If . . . it is determined that the defendant's mental condition has not so improved as to permit proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248."

Although the May 27, 2014 mental health examination report stated "it is our opinion that Mr. Miserandino has the potential to be a danger to the community as a result of his cognitive impairment," the court ordered an additional risk assessment evaluation. The court's June 26, 2014 Order ordered a psychological examination to be made under § 4246(b) to determine whether or not Defendant suffered from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another. The examination under § 4246(b) resulted in a report filed with the court pursuant to the provisions of section 4247(b) and (c).

The U.S. Medical Center for Federal Prisoners issued a Risk Assessment Report for Defendant dated October 7, 2014. The report concluded that "while Mr. Miserandino may pose a risk to the community as a result of his brain injury (and subsequent cognitive impairment), he is no more dangerous than any other person with such an extent of brain damage. This risk would be relatively minor, and have a very small scope, specifically those involved with his direct care.

It is not uncommon for people with significant brain injuries to occasionally become aggressive when confused." The report did not recommend civil commitment under § 4246.

After the parties received the risk assessment report, the court held a hearing on December 5, 2014. The court did not hold a full evidentiary hearing pursuant to §4247(d). Based on the parties' stipulation, the court entered an Order, dated December 15, 2014, finding Defendant incompetent to proceed and a danger to the community pursuant to § 4246(d). The December 15, 2014 Order committed Defendant to the custody of the Attorney General and further ordered that the Attorney General shall release Defendant to the appropriate state official if such state will assume responsibility for his custody, care, and treatment. The Order charged the Attorney General to make all reasonable efforts to cause such a state to assume such responsibility. If, notwithstanding such efforts, the a state did not assume such responsibility, the Order provided that "the Attorney General shall hospitalize Defendant for treatment in a suitable facility until: (1) such a State will assume such responsibility; or (2) Defendant's mental condition is such that his release, or his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would not create a substantial risk of bodily injury to another person or serious damage to property of another; whichever is earlier."

The BOP now claims that this court does not have jurisdiction to review whether the requirements of its own Order have been met. However, in making this argument, the BOP mistakenly relies on to 18 U.S.C. § 4246(a) relating to the institution of a proceeding, which does not apply to Defendant's case. As just outlined by the court, Defendant's case began under §4241 and because the time expired under § 4241(d), Defendant became subject to the provisions of Sections 4246 and 4248. This court's December 15, 2014 Order was an order of commitment

under § 4246(d). The case is presently before the court under § 4246(e). Under § 4246(e), when the director of the facility in which Defendant is held determines the defendant has recovered to an extent that "his release would no longer create a substantial risk of bodily injury to another or serious damage to property of another, he shall promptly file a certificate to that effect *with the clerk of the court that ordered the commitment*." *Id.* § 4246(e) (emphasis added.) The Warden at the U.S. Medical Center for Federal Prisoners filed such a certificate with the clerk of this court on August 18, 2015.

Once a certificate is filed and sent to the parties in the case, § 4246(e) provides that "[t]he court shall order the discharge of the person or, on the motion of the attorney for the Government or on its own motion, shall hold a hearing, conducted pursuant to the provisions of section 4247(d), to determine whether he should be released." *Id.* This court noticed the § 4247(d) hearing and conducted it pursuant to § 4246(e).

Therefore, the court finds no grounds for the BOP's arguments that this court lacks jurisdiction to hear the case. Section 4246(a) for institution of proceedings is not applicable to this case. This court had already issued an order of commitment under § 4246(d). Under § 4246(e), the Warden's certificate was properly filed with this court because this court ordered the commitment. Moreover, the statute provides that once the court receives the Warden's certificate, the court may hold a hearing on the Warden's certificate to determine whether release is appropriate.

The court further finds no basis for the BOP's argument that the court is bound by the certification of the Warden. The statute plainly and clearly states that after receiving the Warden's certificate, this court may hold a hearing on its own motion "to determine whether

5

[Defendant] should be released." Thus, § 4246(e) provides that the court ultimately determines whether Defendant should be released.

Therefore, the issue before the court is whether Defendant should be released. Section 4246(e) provides as follows:

> If, after the hearing, the court finds by a preponderance of the evidence that the person has recovered from his mental disease or defect to such an extent that –
>
> (1) his release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall order that he be immediately discharged; or
>
> (2) his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall–
>
>> (A) order that he be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment that has been prepared for him, that has been certified to the court as appropriate by the director of the facility in which he is committed, and that has been found by the court to be appropriate.

*Id.* § 4247(e).

The court's July 30, 2015 Order previously outlined the court's concerns with the risk assessment reports because of their failure to address how Defendant's condition has changed since he allegedly committed the bank robbery at issue in this case. The court also previously stated that before it could accept the risk assessment report as the order of the court in this case, the court would need substantial examination of the panel members in a § 4247(d) hearing. The court has now had the benefit of hearing from the relevant BOP witnesses at the U.S. Medical

Center for Federal Prisoners and makes the following findings and conclusions with respect to the requirements of § 4247(e).

None of the witnesses assert that Defendant's condition has improved. Defendant has permanent brain damage resulting from a past attempted suicide. Although he retains long-term memories from before the attempted suicide, he has substantial difficulties with his short-term memory. Dr. Barnes testified that day-to-day Defendant functions only by the guidance of others. Dr. Brandt also testified that Defendant cannot function independently. Defendant requires food and medicine to be brought to him and help with hygiene. Dr. Brandt testified that Defendant could not handle his own finances and needs to have some form of guardianship.

Although Defendant has had past incidents of aggression to care givers, his treatment team has reduced his anxiety and agitation, which they believe led to his aggression, through the use of medication. With Defendant's current medication regimen, he has not had incidents of aggression even in an open population. However, both Dr. Brandt and Dr. Barnes testified that he will become anxious and agitated if he does not take his medication, which may lead to him misinterpreting the conduct of others and acting out to defend himself. Although Dr. Brandt testified that if Defendant was released without services, he would probably get hit by a bus before he hurt anyone, he also testified that he does not know how he would respond.

Prior to being medicated and being in a secure facility, Defendant moved from placement to placement because of his aggressive behaviors. He also walked away from his last placement and proceeded to rob a bank, which led to the charges in this case. One significant problem with Defendant's brain damage is that he remembers his conduct from before his suicide attempt, which included serial bank robberies, and he does not form memories of his current less

aggressive state. Tellingly, the risk assessment report and all the BOP witnesses state only that Defendant's risks can be mitigated when he is medicated and in a structured and secure environment. Therefore, the court concludes that there is no evidence that Defendant falls within § 4246(e)(1), which requires Defendant to have recovered from his mental disease or defect to such an extent that his release no longer creates a substantial risk of bodily injury to another person.

At most, Defendant would be able to qualify for a conditional release under § 4246(e)(2) with a prescribed regimen of medical, psychiatric, or psychological care or treatment. Commander Stanley, who has been overseeing Defendant's release plan, testified that Defendant needs a secure facility with twenty-four hour skilled nursing services and an expertise with brain injury, and a medication and treatment plan that mirrors his current situation.

However, the court cannot determine whether Defendant is a risk if he is released to a secure facility as proposed by the BOP because the BOP has not demonstrated that any such facility exists in the State of Utah. The BOP recognizes that Defendant's last placement in Utah was inadequate and even that facility is no longer available.

The BOP asserts that if it releases Defendant to the V.A. Medical Center in Salt Lake City, the V.A. will be motivated to find an adequate placement for Defendant. However, based on the testimony at the hearing, the V.A. does not have a placement opportunity for Defendant. In fact, Rebecca Ann Mabe's testimony demonstrated that it is unlikely whether Defendant would even be able to be placed in an acute treatment unit. If the plan is to bring Defendant to the V.A. Medical Center in Salt Lake, Ms. Mabe testified that Defendant could just walk away. Ms. Mabe further testified that Defendant needs to have a guardianship established and that her

office has been unable to find any other placements with any partnerships it has in the State of Utah.

Under § 4246(e)(2), without an actual secure facility that can definitely take Defendant, there is currently no appropriate discharge regimen or treatment plan in place for Defendant and the court cannot order a conditional discharge. The court cannot simply hope that a facility will materialize after Defendant is released. Given Defendant's condition and the seriousness of the crimes Defendant has committed while in this condition, Defendant's placement must in an appropriate facility must be certain before the court would consider a conditional discharge order to be appropriate. When an appropriate facility placement is certain, the court will revisit Defendant's discharge.

The court requests the Clerk of Court to send a copy of this Memorandum Decision and Order to the Warden of the United States Medical Center for Federal Prisoners.

DATED this 21st day of July, 2016.

BY THE COURT:

DALE A. KIMBALL
United States District Judge